TRULINCS -32515054 - TELLIER, RENE - Unit: ALP-C-A

----------------------------------------------------------------------

FROM: 32515054
TO:
SUBJECT: Cover letter for Hazel-Atlas Action
DATE: 01/31/2012 07:16:45 PM

12 CV 7868

Rene Tellier
Reg # 32515-054
USP Allenwood
Box 3000
White Deer, PA 17887

February 2, 2012

Clerk of the Court
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Tellier v. United States, 92 Cr. 869 (MGC)

Dear Clerk:

Please file and forward the enclosed Hazel-Atlas Action to Judge Miriam Goldman Cedarbaum for her consideration.

A certificate of service is enclosed as required a copy of the Hazel-Atlas Action was filed on the government attorney.

Thank you for your assistance in this matter.

Sincerely submitted,

Rene Tellier
Rene Tellier, Pro-se

## CERTIFICATE OF SERVICE

I, Rene Tellier, hereby certify that a copy of the enclosed Hazel-Atlas Action was served on the United States Attorney for the Southern District of New York by first class mail being sent to:

> United States Attorney
> Southern District of New York
> One Saint Andrew's Plaza
> New York, New York 10007

on this 2nd day of February, 2012.

> Respectfully submitted,
>
> Rene Tellier
> Rene Tellier
> Reg. # 32515-054
> USP Allenwood
> Box 3000
> White Deer, Pa 17887

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**12 CV 7868**

RENE TELLIER,

    Petitioner,

                                 92 Cr. 869 (MGC)

v.

UNITED STATES OF AMERICA,

    Respondent.

## I. PETITIONER TELLIER'S HAZEL-ATLAS ACTION

NOW COMES PETITIONER RENE TELLIER WHO HEREBY MOVES this Court for relief from judgment based on the government's fraud perpetrated upon the Court. In sum, the government made a bogus grand jury transcript for its chief cooperating witness, William D'Angelo, who was cross examined thereof by defense counsel at the trial. In addition, the government created, in whole or in part, grand jury indictments which were used by the court in pre-trial and trial and post trial stages of the prosecution for various reasons. [A]ction must be granted, and the government must be sanctioned [...] t by vacating Tellier's conviction, releasing him from imprisonm[ent...]m,

## II. STAT[UTE...]

There is no statute of limitations for bringing a [...] tes, 2009 U.S. District Lexis 54056 (N.D.N.Y.); see also Hazel-Atl[as...] 8, 244 (1944); see also United States v. Burke, 2008 U.S. District [...]

2255/510

JG

## III.  PROCEDURAL HISTORY

In late 1991, Rene Tellier, Robin Tellier, and codefendants were arrested and arraigned on a federal indictment which charged them with violations of 18 U.S.C. Section 1962 (RICO) and 18 U.S.C. Section 1951 (Hobbs Act) and 18 U.S.C. Sections 924(c) and 922(g) (firearm).  Most of the defendants entered into a plea agreement with the government and subsequently were sentenced; however, Rene Tellier, Robin Tellier, Roy Tellier, Teddy Moustakis, and James Hartofilis proceeded to trial in late November of 1993.  At the end of the three-month-plus trial, the jury returned verdicts of guilty as to Rene Tellier and Robin Telllier and Roy Tellier on all counts.  Teddy moustakis was found guilty of only one predicate act and therefore could not be found guilty of RICO.*

Rene Tellier, Robin Tellier and Roy Tellier appealed to the Second Circuit Court of Appeals which affirmed Rene Tellier's and Robin Tellier's convictions; however, the appellate court reversed Roy Tellier's RICO conviction and remanded the case giving the government the opportunity to re-try him only on a Hobbs Act charge.  See Tellier v. United States, 83 F.3d 578 (2d Cir. 1996).   The government declined to re-prosecute Roy Tellier because even if he was convicted of a Hobbs Act violation, he would have already served over 90% of the sentence at that point in time.  On October 21, 1996, the United States Supreme Court denied Rene Tellier and Robin Tellier petition for a writ of certiorari.  United States v. Tellier, 519 U.S. 955 (1996).

Rene Tellier and Robin Tellier timely filed motions pursuant to 28 U.S.C. Section 2255 collaterally challenging their convictions.  A decade after they filed their petitions, which included some amendments, the court denied their motions and declined to issue either of the litigants a certificate of appealability.  See Robin Tellier v. United States, 2006 U.S. Dist. Lexis 52441 ( S.D.N.Y.); see also Rene Tellier v. United States, 2006 U.S. Dist. Lexis 67357 (S.D.N.Y.); the Second Circuit declined to issue a COA for them, and the Supreme Court denied petitions for

---

\*    James Hartofilis entered into a plea agreement with the government a week before the conclusion of the trial.  The judge advised the government to read a case called Young because Hartofilis name was not yet mentioned throughout the lengthy trial and the judge was concerned over that matter.  That same day the government offered Hartofilis a plea agreement of one year which would give him time served as he was already incarcerated more than a year. See Reves v. Ernst & Young 507 U.S. 170 (1993)(Section 1962(c) creates liability for conduct[ing] or participat[ing] in the conduct of [an] enterprise's affairs through a pattern of racketeering activity).

2

Writs of Certiorari, 170 L.Ed 2d 291 (February 25, 2008); 170 L.Ed 2d 528 (March 24, 2008); and rehearing denied, 171 L.Ed 2d 784 (May 19, 2008).

## IV. FACTS

A. The Government's Hidden Fraudulent Misconduct:

The government attorneys engaged in fraudulent misconduct which they perpetrated upon the District Court during the criminal trial which is as follows:

1. D'Angelo's Grand Jury Transcript at Trial:

The government disclosed to defense counsel William D'Angelo's grand jury transcripts as 3500 material for usage at the trial. D'Angelo allegedly testified before the grand jury which investigated the Telliers and other defendants for violation of federal statutes revolving around racketeering activities and robberies. According to the transcript, D'Angelo was questioned before the investigative body about his involvement in and knowledge about criminal acts committed by the group allegedly led by Rene Tellier and Robin Tellier. D'Angelo told the grand jury about four murders and dozens of robberies all of which were relevant to the crimes charged in the indictment against the Telliers.

During the trial, Attorney Hanna questioned D'Angelo about his alleged grand jury testimony related to the burning of a stolen vehicle. The government sat by silently and allowed D'Angelo's testimony to go uncorrected, although the government knew no grand jury appearance was ever made by D'Angelo.*

B. The Government's Exposed Fraudulent Misconduct:

William D'Angelo, Petitioner's cousin, was the government's star co-operating witness against the Telliers. D'Angelo was relocated and enrolled in the Witness Security Program by the government in exchange for his cooperation in the case. D'Angelo, charged in an information, was sentence by the district court following his satisfaction of the cooperation agreement to testify in the criminal trial.

---

\* Because Tellier is momentarily not in possession of the trial transcript but relies on trial notes, it is unclear whether the government used the bogus grand jury transcripts on direct or re-direct examination of D'Angelo. Tellier is currently in the process of obtaining a copy of D'Angelo's full trial testimony.

3

In April of 2010, Rene Tellier spoke with his cousin Joanne Guarneri whom he had not conversed with since the 1980's. After they had spoken several times by telephone, she stated that she was in contact with her brother, William D'Angelo. She said that D'Angelo was currently incarcerated in a Northwestern State and was due to be released in several months. Tellier reasoned to himself that the government might have engaged in misconduct, like it did with Devito, by taking him to prosecutor deposition rather than a grand jury proceeding. As a result, Tellier asked Joanne if she could send D'Angelo a message from him. She agreed. Tellier told her to inquire of D'Angelo whether he ever appeared before a grand jury and or prosecutor deposition. Tellier later re-contacted Joanne who stated that D'Angelo stated that he never went before a grand jury proceeding but he only appeared before a government deposition. In order to make sure there was not a misunderstanding on the issue of no grand jury appearance, eventually Tellier sent D'Angelo, through Joanne, three affidavits asking him to sign the affidavit which accurately described what had transpired in regard to his testimony.* Tellier further added if none of the affidavits concisely described the occurrence, then D'Angelo should make his own affidavit, sign it, and return it to Joanne.

In and around late July of 2010, Rene Tellier received William D'Angelo's affidavit (see D'Angelo's Affidavit, Exhibit 1). In the affidavit, D'Angelo confirms that the government deposed him in a deposition setting and at no time did he make a grand jury appearance in connection with the Tellier case.** (see also Grand Jury Transcript, Exhibit 2).

## IV.  STANDARD OF REVIEW

In order to meet the necessarily demanding standard for proof of fraud upon the court we conclude that there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. We further conclude that a determination of fraud on the court may be justified only by

---

\*   Three affidavits were sent to D'Angelo. For the first affidavit, it provided that D'Angelo only appeared before a grand jury; for the second affidavit, it averred that D'Angelo appeared before a grand jury and a prosecutor deposition; and for the third affidavit, it declared that D'Angelo was deposed in only a prosecutor deposition.

\*\*   D'Angelo's affidavit was not notarized because his place of incarceration did not provide a notary public. D'Angelo signed the affidavit, mailed it to his sister, Joanne Guarneri, who in turn mailed it to Susan Tellier, who mailed it to Rene Tellier. D'Angelo signed the document under penalty of perjury, and therefore it legally qualifies as a declaration under 28 U.S.C. Section 1746 (2); see Pennsylvania Food Merchants Assoc. Inc., v. Feather O. Houstoun, 999 F.Supp 611 Fn. 3 (M.D. Pa 1998).

4

the most egregious misconduct directed to the court itself, and that it must be supported by clear, unequivocal and convincing evidence. Fraud on the court must constitute egregious misconduct such as bribery of a judge or jury or [f]abrication of evidence by counsel. See United States v. Burke, 2008 U.S. Dist. Lexis 27125 (M.D. Pa); see also Blythe v. United States, 2009 U.S. Dist. Lexis 54056 (N.D.N.Y.); see also Hazel Atlas Glass Com. v. Hartford Empire Com., 322 U.S. 238, 244 (1944). With this standard in mind, we now turn to the matter at hand:

V. ARGUMENT

A. The Standard for Fraud upon The Court

1. The component of Intention

The first component of the fraud standard demands proof that the fraud upon the court must be intentionally done. There can be absolutely no dispute that the government attorneys purposely went out of their way to fraudulently mislabel the deposition transcript making it appear to be the work product of the grand jury. Former AUSA Paul Gardephe, currently a United States District Court Judge seated in the Southern District of New York, deposed D'Angelo in a depositional setting and then committed an act of forgery when he, including his co-conspirators, altered the transcript to make it deceptively send the connotation that its origin exclusively originated from the grand jury.

Moreover, former AUSA Gardephe added opening statements and closing statements to the fictitious grand jury, and if that is not enough, he asked them if they had any questions for Mr. D'Angelo because the government was ready to excuse him as a witness. At that point one grand juror chimed in and asked D'Angelo one non-essential question about his discharge from the Marines.

Finally, the cover page of the transcript, including the heading on every page, read Grand jury and William D'Angelo. Based on these particulars, without a shred of doubt, it can be accurately stated as a fact that the government attorneys operated in an intentional mode for the perpetration of the fraud. The government did knowingly and willingly create false evidence and did knowingly and willingly introduced it through the trial court.

2. The Component of Counsel's Courtship Capacity

The second component of the fraud standard requires proof that the fraud upon the Court must be perpetrated by an officer of the court.

5

Obviously the three former Assistant United States Attorneys, Paul Gardephe, Lorin Reisner, and Guy Petrillo were all officers of the court in a prosecutorial capacity employed by the Executive Branch of the Department of Justice, especially when they prosecuted the Telliers and their co-defendants. During the investigative stage of the case, former AUSA Gardephe fraudulently manufactured the grand jury transcript of D'Angelo.*

3. The Component of the Target

The third component of the fraud standard requires proof that the fraud upon the Court must be directed at the Court.

The government's carefully executed plan of dissemination of the bogus grand jury transcript to the defense team was to cover-up the fact that D'Angelo never appeared before the grand jury; that is, if a grand jury ever sat on the case. The trial disclosure of the forged transcript occurred under Rule 26 of the Federal Rules of Criminal Procedure and 18 USC Section 3500; indeed, the government's usage of the rule and statutory provision to introduce the bogus transcript into the procedural realm of the trial qualifies as a fraud specifically directed at the court.

Moreover, the government's carefully executed plan was also to cover-up the fact that the original indictment and four superseding indictments, whether in part or in whole, were falsely generated by the government behind closed doors. As a result, this leads to the conclusion that the grand jury did not return the indictments, since without D'Angelo's testimony they could not find probable cause existed that the Telliers may have committed the murders.**  The fraudulent indictments were directed at the court considering the court used them in arraignments, evaluation of evidentiary rulings, and charging the jury at the conclusion of the trial.

---

\*   The government also committed a fraud upon the court concerning Dominic Devito when it characterized his deposition appearance as a grand jury appearance in order to prevent the disclosure of his testimony at a post-trial hearing. That matter is not before this court but Tellier reserves the right to brief the issue to show a pattern of fraudulent misconduct by the prosecutor's office directly perpetrated upon the court to deceive it from operating in its capacity to manage the criminal case pending before it.

\*\*   If the government attempts to argue that Kimberly Graulich gave grand jury testimony about a homicide, it would only account for one homicide of four charged in the indictments and that is if she even made a grand jury appearance in the first place. This would also mean that the grand jury could not have indicted on the other murders.

6

4. The Component of Deception

The fourth and finally component of the fraud standard requires evidence that the fraud upon the court actually deceived the court.

A. The Bogus Transcript

The creation of the transcript perfectly mirrored the attributes found in a grand jury transcript. A deposition transcript would not have had all the normal identification markings and information provided in it. The bogus transcript carried the grand jury heading on every page along with William D'Angelo's name and the date of the alleged appearance and testimony. Moreover, the cover page had the official caption and identification of the document as a grand jury transcript. This counterfeit document appeared to be an official document.

B. The Perjurous or Ignorant Witness

Whether D'Angelo was a perjurous witness or an ignorant one does not matter but the government in any event used him to advance their fraud-on-the-court agenda. The government deceived the court on the matter of authenticity (a) by coaching D'Angelo into falsely testifying by characterizing his deposition testimony as grand jury testimony; or, (b) by leading D'Angelo into believing that the deposition proceeding could qualify also as a grand jury proceeding; as a result, this allowed him to refer to the prior testimony as grand jury testimony.

C. The Bogus Indictments

The bogus grand jury transcript of D'Angelo deceived the court into assuming that the indictment and superseding indictments were legitimately the work product of the grand jury. In sum, the government's deceptive scheme fooled the court * into believing the grand jury returned the indictments succeeded. Had the Court known otherwise it would have dismissed the indictments and ordered an investigation concerning the egregious, fraudulent misconduct.

---

\* The government also deceived Telliers' Defense Team to make the exact assumption through disclosure of the false grand jury transcript. If the government did not provide the bogus transcript, then the defense team, including the Telliers, would have questioned how the grand jury had indicted them on the murders, since without D'Angelo's grand jury testimony no probable cause could be established for all the homicides charged in the forged indictments.

In Hazel-Atlas, the Supreme Court held that "furthermore, tampering with the administration of justice in a manner indisputably shown here involves far more than a injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of the litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception by fraud." Hazel-Atlas Glass Com. v. Hartford-Empire Com., 322 U.S. 238, 246 (1944).

As in Hazel-Atlas, the government may attempt to argue that the forged grand jury transcript and the forged indictments, although deceptive on their origin of creation, are still factually true. In Hazel-Atlas, the Supreme Court addressed this very argument, holding:

> "The circuit court also rested denial of relief upon the conclusion that the Clarke article was not "basic" to the court's 1932 decision. Whether or not it was the primary basis for the ruling, the article did impress the court, as shown by the court's opinion. Doubtless it is wholly impossible accurately to appraise the influence that the article exerted on the judges, But we do not think the circumstances call for such an attempted appraisal. Hartford's officials and lawyers thought the article was material. They conceived it in an effort to persuade a hostile patent office to grant their patent application, and went to considerable trouble and expense to get it published. Having lost their infringement suit based in the patent in the district court wherein they did not specifically emphasize the article, they urged the article upon the circuit court and prevailed. They are in no position now to dispute its effectiveness. Neither should they now be permitted to escape the consequences of Hartford's deceptive attribution of authorship to Clarke on the ground that what the article stated was true. TRUTH NEEDS NO DISGUISE. The article, even if true, should have stood or fallen under the only title it could honestly have been given--that of a brief in behalf of Hartford, prepared by Hartford's agents, attorneys and collaborators." (emphasis added)

Hazel-Atlas Glass Co., 322 U.S. @ 246-247. The government's fraudulent misconduct upon the court exhibited in this case by far outweighs the fraud perpetrated on the court in Hazel-Atlas; in particular, the government forged an official grand jury transcript, allowed perjured testimony based thereon in the trial court, and, even more troubling, forged in whole or in part the grand jury indictments filed in the court. These acts of forgery and deception upon the court

now raise a lot of complex questions and legal grounds all of which are not addressed herein; however, the most obvious issue is the nullity of all the indictments which, in essence, rendered all the district-court proceedings a nullity as well.

D. Newly Discovered Evidence of Fraud

Tellier could not obtain the information about the fraud any sooner because William D'Angelo was relocated by the federal government when he was placed in the Witness Security Program for his protection against retaliation from the alleged Tellier Organization. It was only by chance recently that Rene Tellier reconnected with his cousin Joanne Guarneri whom he had not spoken with since the 1980's. Joanne connected Rene Tellier with D'Angelo through correspondence. D'Angelo signed a declaration averring that he never made an appearance before the grand jury but only appeared before a prosecutor deposition. Tellier is not clairvoyant and therefore could not know that the government perpetrated a fraud upon the court without the recent startling revelation from D'Angelo. D'Angelo divulged this well-kept secret in July of 2010.

## VI. CONCLUSION

WHEREFORE, the Hazel-Atlas Action should be GRANTED for all of the aforementioned reasons, and the government sanctioned accordingly for its egregious misconduct of perpetration of fraud on the Court. Tellier's conviction should be vacated, Tellier should be released from imprisonment, and Tellier should be immune from being re-tried by the government.

February 2, 2012

Respectfully submitted,

Rene Tellier, Pro-se
Reg. # 32515-054
USP Allenwood
White Deer, Pa 17887

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENE TELLIER,
ROBIN TELLIER,

        Defendants.

92 CR 869 (MGC)

v.

UNITED STATES OF AMERICA,

        Respondent.

## DEFENDANTS' JOINT EXHIBITS IN SUPPORT OF THE HAZEL-ATLAS ACTION

1. William D'Angelo's Declaration..................................................Exhibit 1

2. Grand Jury Transcript...............................................................Exhibit 2 *

\* Note: Exhibit 2 is not provided in its entirety as it is over 50 pages, but upon request Tellier shall send a copy of the transcript to the Court

## Joanne Guarneri

| | |
|---|---|
| From: | TELLIER RENE (32515054) |
| Sent Date: | Saturday, April 17, 2010 10:18 PM |
| To: | joanneg221@yahoo.com |
| Subject: | Affidavit |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENE TELLIER,

    Movant,

v.

                                    92 Cr 869 (MGC)

UNITED STATES OF AMERICA,

    Respondent.

### AFFIDAVIT OF WILLIAM D"ANGELO

I, William D'Angelo, hereby declare under penalty of perjury as follows:

1. I am familiar with the relevant facts surrounding the above-captioned case.

2. During the government's investigation of the Tellier Organization, I was never brought before a grand jury

proceeding. I did, however, make an appearance for a prosecutor deposition. At this deposition, I was asked questions

and gave answers to the government attorney. A stenographer took the testimony.

WHEREFORE, I declare under penalty of perjury that the foregoing is true and correct.

Dated _____

Notary Public Stamp, Date, and Signature:

Respectfully submitted,

William D'Angelo
208-48 15th Road
Bayside, New York 11360
(legal mailing address)

Page 1 of 1

6/10/2010

EXHIBIT 1

```
 2    UNITED STATES GRAND JURY
      SOUTHERN DISTRICT OF NEW YORK
 3    ---------------------------------x

 4    UNITED STATES OF AMERICA

 5              v.                              April '91 Add'l

 6    ROBIN TELLIER

 7    ---------------------------------x

 8
                                                U.S. Courthouse
 9                                              Foley Square
                                                New York, N.Y.
10
                                                July 1, 1992
11                                              2:20 p.m.

12

13
      APPEARANCES
14

15    PAUL GARDEPHE,
           Assistant United States Attorney
16

17

18

19    THOMAS FERNICOLA
           Acting Grand Jury Reporter
20

21

22

23
                                          3564 D
24

25


                SOUTHERN DISTRICT REPORTERS 212-791-1020
```

Exhibit 2

2                    (Colloquy)

3                    (Witness enters 2:25 p.m.)

4    W I L L I A M    D ' A N G E L O ,

5         called as a witness, having been duly sworn by the

6         foreperson, testified as follows:

7    BY MR. GARDEPHE:

8         Q.   Mr. D'Angelo, could you state and spell your

9    last name for the record?

10        A.   William D'Angelo, D'-A-N-G-E-L-O.

11        Q.   Mr. D'Angelo, you are appearing before the

12   April 1991 Grand Jury which is investigating possible

13   racketeering violations committed by yourself, Robin

14   Tellier, Rene Tellier, their brothers and their

15   associates.  At this time I want to inform you of your

16   constitutional rights.

17              Under the Fifth Amendment of the constitution

18   you have a right not to answer a question if you believe

19   that your answer to that question would tend to

20   incriminate you.  Do you understand that?

21        A.   Yes.

22        Q.   If you answer any questions, the answers

23   which you give can be used against you in a court of law

24   or in other proceedings.  Do you understand that?

25        A.   Yes.

2    Q.    If you decide to answer questions which are
3    asked of you, you can afterwards stop answering
4    questions at any time and invoke your privilege against
5    self-incrimination.  Do you understand that?
6    A.    Yes.
7    Q.    You have a right to consult with a lawyer of
8    your choice before answering any questions here today.
9    Do you understand that?
10   A.    Yes.
11   Q.    If you are unable to afford a lawyer, one
12   will be appointed to represent you and you may consult
13   with that lawyer before answering any questions here
14   today.  Do you understand that?
15   A.    Yes.
16   Q.    Have you consulted with a lawyer before your
17   appearance here today?
18   A.    Yes.
19   Q.    What is his name for the record?
20   A.    David Levin.
21   Q.    Mr. D'Angelo, you are under oath; that means
22   that you've sworn to tell the truth to the Grand Jury.
23   If you make any knowing misstatement of a material fact
24   to the Grand Jury, you could be charged with a federal
25   crime, including perjury and obstruction of justice

1
2       Q.    A variety of stores?
3       A.    Yes.
4             MR. GARDEPHE: Ladies and gentlemen, I have
5  no further questions for Mr. D'Angelo today.
6             With the foreperson's permission, I'd ask
7  that he be excused.
8             THE FOREPERSON: You may be excused.
9             (Witness excused 3:25 p.m.)
10            (Colloquy)
11            (Witness enters 3:26 p.m.)
12            THE FOREPERSON: Mr. D'Angelo, you're still
13 under oath.
14      Q.    Mr. D'Angelo, you recall your testimony about
15 your period of time in the Marine Corps?
16      A.    Yes.
17      Q.    Do you remember what type of discharge it was
18 that you got when you left the military?
19      A.    It was under medical conditions but they
20 didn't -- they wasn't giving medical discharges out any
21 more. They phased that out. They gave me Other than
22 Honorable.
23      Q.    Other than Honorable?
24      A.    Yes.
25      Q.    I think I have no further questions for you

```
 1  tf                    D'Angelo - 7/1/92                    51
 2  at this time.
 3              MR. GARDEPHE:  Again, I ask that you be
 4  excused.
 5              THE FOREPERSON:  He may be excused.
 6              (Witness excused 3:26 p.m.)
 7              (Colloquy)
 8              (Time noted 3:26 p.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

